**JACKSON EXPRESS, INC., Jack C. Robinson, d/b/a Robinson Freight Lines, Inc. and Service Transport, Inc., Appellees,**

v.

**TENNESSEE PUBLIC SERVICE COMMISSION and Averitt Express, Inc., Appellants.**

Supreme Court of Tennessee, at Nashville.

Nov. 5, 1984.

Charles L. Lewis, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen. & Reporter, for Tenn. Public Service Com'n.

Robert L. Baker, J. Greg Hardeman, Buck, Baker & Bramlett, Nashville, for Averitt Exp., Inc.

Jean Nelson, Gullett, Sanford & Robinson, James Clarence Evans, Nashville, Thomas Stroud, Memphis, for appellees.

## OPINION

COOPER, Chief Justice.

This action questions an order of the Tennessee Public Service Commission granting Averitt Express, Inc., a common carrier, two alternate route deviations under Chapter 1220-2-1-.41 of the Commission's Rules, Regulations and Statutes Governing Motor Carriers (1978). The Chancery Court of Davidson County affirmed the grant of the deviations, but the Court

of Appeals, Middle Section, reversed after finding the Commission's interpretation of the rule was erroneous and did violence to the rule itself. We affirm the result reached by the Court of Appeals.

Entry by motor carriers into the state transportation system is governed by the Tennessee Motor Carriers Act, T.C.A. § 65–15–101 et seq. (1982 & Supp.1984). Under this act, the Public Service Commission was given the authority to promote and regulate a sound transportation system, to relieve undue burdens on the highways, to protect the public, and to protect the state's property from unreasonable use. T.C.A. § 65–15–101 (1982). A carrier seeking to operate in the state must first obtain a certificate from the Commission stating that public convenience and necessity will be promoted. T.C.A. § 65–15–107 (1982). A hearing must be held, with notice going to every common carrier already operating, or who has applied to operate on the territory sought to be covered by the applicant. A decision is to be made on the evidence, and the Commission must consider the existing transportation service in the area, the service to be rendered by the applicant, the financial condition of the applicant, the highways to be used and the effect thereon, the public need for the service, the likelihood of permanence, the effect upon other transportation service, and all other pertinent facts. An application for a certificate of convenience and necessity must describe the applicant's ownership and financial situation, the equipment to be used, the routes sought, the territory to be served, and the proposed rates and schedules. T.C.A. § 65–15–109 (1982).

Tennessee Public Service Commission Rule 1220–2–1–.41 authorizes deviations from a carrier's already existing, authorized route "for operating convenience only." Such deviation is allowed when there is an interstate highway or freeway "which extends in the same general direction as such regular service route." The ratio between the length of the regular route and the length of the allowed deviation is not important. However, the use of the alternate route must not materially change the competitive situation between carriers on that route, or create new or additional service. This rule was adopted in 1968 to prevent numerous requests for certificates of convenience and necessity from carriers seeking to use portions of the then uncompleted interstate highway system.

Averitt Express filed a petition for deviation with the Public Service Commission on May 22, 1981, and requested the following routes:

(1) Between Nashville and Jackson, TN. From Nashville over I–40 to Jackson, TN., and return over the same route, as an alternate route for operating convenience.

(2) Between Chattanooga and Nashville, TN. From Chattanooga over I–24 to junction with U.S. Hwy 72, then over U.S. Hwy 72 to junction with I–24, then over I–24 to Nashville and return over the same route, as an alternate route for operating convenience only.

Averitt Express had developed an extensive network of freight hauling through grants from the Commission and through the purchase of certificates of authority from other carriers. Tacking of these certificates had produced a circuitous, patchwork system of authorized routes. For example, one route allowed Averitt to transport goods from Nashville to Jackson, but only by travelling east to Cookeville or Knoxville, then south to Chattanooga, west to Memphis, and, finally, northeast to Jackson. The distance is over 600 miles. The requested deviation would establish a direct line of only 120 miles from Nashville to Jackson. A second route allowed shipping from Nashville to Chattanooga, but only by passing through Cookeville or Knoxville and then heading south to Chattanooga. The requested deviation, for a direct Nashville to Chattanooga route, would save half the mileage of going through Knoxville and be fifty miles less than going through Cookeville.

The Commission issued a notice of hearing for the requested deviations on June 25, 1981, and the hearing was held on July 13, 1981. Jackson Express, Inc. was the only competitor to appear, and was allowed to contest the deviations. The General

Counsel for the Commission submitted a memorandum suggesting that the petition be denied since the alternate routes sought were not in the same general direction as the regular routes.

The Commission granted the petition by order of October 28, 1981. The Commission noted that "a strict interpretation of Commission Rule 1220–2–1–.41 would not permit authorization of Averitt's proposed alternate routes," but that "regulations which perpetuate circuitous and unnecessarily restrictive route limitations are no longer appropriate in these environmentally conscious times." To the extent that the requirements of Rule 1220–2–1–.41 were not met, the Commission treated the petition as a limited request for additional operating authority pursuant to T.C.A. § 65–1507(a) (new § 65–15–107 (1982)). It noted that the deviations were not parallel to or in the same general direction as Averitt's authorized routes, and that the new routes would "undoubtedly change the competitive situation between Averitt and Jackson." Nevertheless, a certificate of convenience and necessity was issued to Averitt.

Service Transport, Inc., a competitor of Averitt with an already existing direct route between Nashville and Jackson, sought to intervene on November 5, 1981. Service contended that no notice had been given that the proceeding was to be treated as an application for additional operating authority and that the Commission would disregard and refuse to comply with Rule 1220–2–1–.41. Thus, no earlier attempt to intervene had been made. A similar request was filed on November 12, 1981, by Jack C. Robinson, d/b/a Robinson Freight Lines, et al. These requests were denied. Jackson Express filed a petition for rehearing on November 12, 1981, which was granted on December 8, 1981. Subsequently, Service Transport obtained an order from the Chancery Court of Davidson County staying all proceedings until Service Transport was recognized as a party.

On April 7, 1982, the Commission issued an order that granted all interested competitors the right to intervene, dissolved the initial order granting the deviations, and stated that no hearings would be held, but that a decision would follow from the written arguments. The order then again granted the deviations to Averitt, stating that the deviations were in the same general direction and that the competitive situations along the routes would not be materially changed. Averitt's competitors sought relief in the Chancery Court of Davidson County, which upheld the Commission's order. That court held that there was evidence in the record to support the Commission's finding that the deviations ran in the same general direction as the existing routes, and that no violence was done to Rule 1220–2–1–.41.

As heretofore noted, the Court of Appeals held that the Commission's interpretation of Rule 1220–2–1–.41 was plainly erroneous and did violence to the rule itself.

Generally, courts must give great deference and controlling weight to an agency's interpretation of its own rules. *Environmental Defense Fund, Inc. v. Tennessee Water Quality Control Board,* 660 S.W.2d 776, 781 (Tenn.App.1983) *permission to appeal denied July 25, 1983; Puerto Rico Maritime Shipping Authority v. Federal Maritime Commission,* 678 F.2d 327 (D.C.Cir.1982). A strict standard of review applies in interpreting an administrative regulation, and the administrative interpretation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Compton v. Tennessee Department of Public Welfare,* 532 F.2d 561, 565 (6th Cir.1976) (quoting *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed. 616, 625 (1965).

We agree with the Court of Appeals that the Commission's interpretation of Rule 1220–2–1–.41 so as to find that the deviations were in the same general direction as the regular routes was plainly erroneous. A deviation heading west from Nashville to Jackson is not in the same general direction as one going east from Nashville to Knoxville or Cookeville, south to Chattanooga, west across the base of the state to Memphis, and then northeast to Jackson. Similarly, the requested Nash-

ville to Chattanooga deviation is not in the same general direction as a route heading east from Nashville to Knoxville or Cookeville, and then south to Chattanooga.

■ The Commission's original order of October 28, 1981, realized the inapplicability of Rule 1220–2–1–.41 when it stated "[t]herefore, to the extent our decision conflicts with the requirements of Rule 1220–2–1–.41, we will consider Averitt's petition as a limited request for additional operating authority pursuant to T.C.A. § 65–1507(a)." This holding was improper for it allowed a grant of authority to be issued without following the mandatory procedures of T.C.A. § 65–1507(a). The Commission may have realized this when its order of April 7, 1982, dissolved the first order and stated that the decision was grounded solely under Rule 1220–2–1–.41. As noted, that rationale is also not valid.

The action of the Court of Appeals in reversing and remanding to the Chancery Court is affirmed. Costs will be Taxed to the appellants.

FONES, BROCK, HARBISON and DROWOTA, JJ., concur.