IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 13, 2010 Session

## CLEAR CHANNEL OUTDOORS ET AL. v. TENNESSEE DEPARTMENT OF TRANSPORTATION

**Appeal from the Chancery Court for Davidson County**
**No. 05-1839-II     Carol McCoy, Chancellor**

_____

**No. M2009-01631-COA-R3-CV - Filed September 15, 2010**

_____

The issues on appeal pertain to a nonconforming, grandfathered billboard that was destroyed by a natural disaster in 1998. The original billboard, which was erected prior to the enactment of the Billboard Regulation and Control Act, Tenn. Code Ann. § 54-21-101, *et seq.*, was allowed to remain as a nonconforming, grandfathered device. After the nonconforming billboard was destroyed by a natural disaster, TDOT authorized Appellants to rebuild the billboard provided that it was rebuilt to the original size "using like materials" pursuant to Tenn. Comp. R. & Regs. 1680-2-3-.04(2) (1998). The original billboard stood on two wooden posts and had a metal facing. When Appellants rebuilt the billboard by erecting it on a steel monopole instead of two wooden poles, TDOT filed a Notice of Charges stating the new billboard failed to comply with the regulation because it was not rebuilt with "like materials." Following a hearing, the administrative judge concluded that the billboard was in violation of the regulation, which decision was affirmed by the Commissioner of TDOT and the chancery court. Appellants contend on appeal that the billboard is in compliance with the regulation and that the removal of the billboard constitutes an unconstitutional taking of property without just compensation. We affirm the finding that the billboard was not in compliance with the regulation as it was not rebuilt using "like materials."

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., and JERRY SMITH, SP. J., joined.

Arvin H. Reingold, Chattanooga, Tennessee, for the appellants, Clear Channel Outdoors and George and Katherine Morgan.

Robert E. Cooper, Jr., Attorney General and Reporter; and Bruce M. Butler, Assistant Attorney General, for the appellee, Tennessee Department of Transportation.

**OPINION**

This action arises following the destruction of a billboard in 1998 due to a severe storm and the subsequent rebuilding of the billboard, which the Tennessee Department of Transportation (hereinafter "TDOT") found failed to comply with applicable state regulations.[1] The original permit, filed on July 7, 1972, authorized the construction of a lighted billboard with a combination of wood and metal. Later that year, the Tennessee General Assembly enacted the Billboard Regulation and Control Act of 1972 as a response to the Federal Highway Beautification Act of 1965. As a consequence of these Acts, and subsequent TDOT regulations promulgated pursuant thereto, the billboard was deemed a grandfathered, nonconforming device.

The 1972 billboard, which stood 60 feet high on two wooden poles with a metal face 14 feet tall by 46 feet wide, was destroyed by a severe storm on September 6, 1998. Following its destruction, the owner of the billboard, Clear Channel,[2] submitted a formal request to TDOT requesting permission to rebuild the billboard. Gina Hemmen responded on behalf of TDOT by letter dated September 10, 1998, stating that permission was given to rebuild the sign "in its exact location using like materials to its original size and height." The letter also stated that TDOT's records indicated the destroyed billboard was constructed on wood posts. Based upon TDOT's response, Clear Channel promptly proceeded to reconstruct the billboard.

The rebuilt billboard was erected in the same location and to the same height and width; however, instead of rebuilding it on two wooden poles with a metal face, the new billboard was erected on a steel monopole and the face of the billboard was constructed of wood. Following an inspection of the new billboard, TDOT sent a notice to Clear Channel and the owners of the property on which the sign was erected, George and Katherine Morgan, (hereinafter the "Appellants") informing them the billboard violated the applicable statutes and regulations. Thereafter, a formal Notice of Charges was sent stating the billboard failed to comply with the applicable statutes and regulations, specifically Tenn. Comp. R. & Regs. 1680-2-3-.04(2) (1998).[3]

---

[1] The billboard is located near mile marker 5.67 on Interstate 24 in Hamilton County, Tennessee.

[2] The billboard was owned by Eller Media at the time. Clear Channel acquired all rights to the sign from Eller Media; thus, we shall identify the owner of the billboard as Clear Channel throughout this opinion.

[3] This Rule was subsequently amended and the provision allowing for a grandfathered, nonconforming device to be rebuilt following a natural disaster was deleted. This provision was in effect, however, during the time period pertinent to this appeal.

Rule 1680-2-3-.04(2) provided a "natural disaster exception" to the regular maintenance rules applicable to nonconforming grandfathered devices and stated: "A non-conforming device or grandfathered non-conforming device will be allowed to be rebuilt in the case of natural disaster. Non-conforming and grandfathered non-conforming devices destroyed or damaged during a natural disaster may be rebuilt to their original height and size using like materials." The Notice of Charges stated Appellants violated the regulation because the new billboard had a steel monopole, instead of wood posts, which did not constitute "like materials" and, therefore, the billboard constituted a new structure without a permit.

A hearing was held on the charges on April 22, 2004 before an administrative judge. An Initial Order was entered on November 18, 2004 in which the administrative judge ruled that the new billboard was not in compliance with the applicable regulations and should be removed within 30 days. The administrative judge found that steel and wood were not like materials and thus the rebuilt billboard was a new device and could no longer be considered a grandfathered, nonconforming device. Appellants filed a petition for reconsideration, which was denied.

Appellants then requested an appeal to the Commissioner of TDOT. The Commissioner denied their appeal in a Final Order entered May 23, 2005. The Commissioner ruled that the rebuilt billboard violated Tenn. Comp. R. & Regs. 1680-2-3-.04(2) because it was not rebuilt with "like materials." The Commissioner then found that Clear Channel would not be given the opportunity to conform the billboard to comply with the regulation. Appellants filed a petition for review before the chancery court. The chancery court issued an order on September 26, 2006 upholding the decision of the Commissioner. A notice of appeal to this court was filed. This court vacated the chancery court's September 2006 decision upon the finding that the entire administrative record had not been filed before the chancery court; we remanded the action for review on the full administrative record. On July 1, 2009, the chancellor issued a Memorandum and Order upholding the Commissioner's ruling. The chancellor found that there was substantial and material evidence to uphold the Commissioner's findings and rejected Appellants' arguments that the burden of proof was improperly assigned and that the Commissioner's order was an unconstitutional taking of property without just compensation.

The Appellants present three issues on appeal. They contend the chancellor erred in upholding the Commissioner's finding that the new billboard violated Tenn. Comp. R. & Regs. 1680-2-3-.04(2) because it was not constructed of "like materials." They contend the burden of proof was improperly placed upon them instead of the Department. They also contend the order requiring the removal of the billboard constitutes an unconstitutional taking of property without just compensation.

STANDARD OF REVIEW

Judicial review of decisions of administrative agencies, when those agencies are acting within their area of specialized knowledge, experience, and expertise, is governed by the narrow standard contained in Tenn. Code Ann. § 4-5-322(h) rather than the broad standard of review used in other civil appeals. *Willamette Indus., Inc. v. Tennessee Assessment Appeals Comm'n,* 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999) (citing *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279-80 (Tenn. Ct. App. 1988)).

The trial court may reverse or modify the decision of the agency if the petitioner's rights have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1)     In violation of constitutional or statutory provisions;
(2)     In excess of the statutory authority of the agency;
(3)     Made upon unlawful procedure;
(4)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5)(A)  Unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 4-5-322(h)(1)-(5)(A). However, the trial court may not substitute its judgment concerning the weight of the evidence for that of the Board as to questions of fact. Tenn. Code Ann. § 4-5-322(h)(5)(B); *see also Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002). The same limitations apply to the appellate court. *See Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 668 (Tenn. 1977) (holding the trial court, and this court, must review these matters pursuant to the narrower statutory criteria). Thus, when reviewing a trial court's review of an administrative agency's decision, this court is to determine "whether or not the trial court properly applied the . . . standard of review" found at Tenn. Code Ann. § 4-5-322(h). *Jones*, 94 S.W.3d at 501 (quoting *Papachristou v. Univ. of Tennessee,* 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000)).

**ANALYSIS**

I.

Our analysis begins in 1965 when the United States Congress enacted the Federal Highway Beautification Act, 23 U.S.C. §§ 131, 136, 139. The purpose of the Highway Beautification Act is to ". . . protect the public investment in such highways, to promote the

-4-

safety and recreational value of public travel, and to preserve natural beauty." 23 U.S.C. § 131(a). To achieve its purpose, the Highway Beautification Act required states to enact legislation to control outdoor advertising signs, or else risk losing federal funding for highway improvements. 23 U.S.C. § 131(a)-(c).

In response to the federal legislation, the Tennessee General Assembly enacted the Billboard Regulation and Control Act of 1972, Tenn. Code Ann. § 54-21-101, *et seq*. The Billboard Regulation and Control Act conferred full authority upon the Commissioner of TDOT "to promulgate and enforce any and all regulations as required and necessary to fully carry out" the provisions of both the federal and state acts. Tenn. Code Ann. § 54-21-112.

In addition to requiring states to enact new measures addressing the construction and maintenance of new billboards, federal regulations also allowed states to adopt "grandfather clauses" for billboards erected prior to the adoption of the new laws and regulations. 23 C.F.R. § 750.707(c). The federal regulation allowed "pre-existing billboard structures to remain in place even though they do not conform to current size, lighting, or spacing requirements." *Lamar Outdoor Advertising Co. v. Tenn. Dept. of Transportation*, No. M2006-00915-COA-R3-CV, 2007 WL 2330852, at *5 (citing 23 C.F.R. § 750.707(c)). However, the grandfathered, nonconforming billboards were allowed to remain only "*for the duration of its normal life* subject to customary maintenance," and only if the billboard remained "substantially the same as it was on the effective date" of the current state law or regulation. 23 C.F.R. § 750.707(c), (d)(5) (emphasis added). States were allowed to establish their own criteria for "when customary maintenance ceases and a substantial change has occurred which would terminate nonconforming rights." 23 C.F.R. § 750.707(d)(5).

Pursuant to the federal guidelines, TDOT adopted a "grandfather clause" that defines a grandfathered, nonconforming device as:

> [O]ne which was lawfully erected prior to the passage of the state law which was lawfully erected prior to the passage of the state law which is located in a legal area as defined by the law but which does not meet size, and lighting, or spacing criteria as set forth in the Agreement entered into between the Department of Transportation and the Federal Highway Administration which is part of the law.

Tenn. Comp. R. & Regs. 1680-2-3-.02(11).

In furtherance of the federal mandate that grandfathered nonconforming billboards be allowed to remain for the duration of the billboard's normal life, subject to customary maintenance, *see* 23 C.F.R. § 750.707(c), (d)(5), Tennessee adopted restrictions "to prevent

changes to non-conforming billboards and promote the eventual elimination of all non-conforming devices from areas adjacent to the highway." *Universal Outdoor, Inc. v. Tenn. Dep't of Transp.*, No. M2006-02212-COA-R3-CV, 2008 WL 4367555, at *6 (Tenn. Ct. App. Sept. 24, 2008) (citing *Rives v. City of Clarksville*, 618 S.W.2d 502 (Tenn. Ct. App. 1981) (eventual termination of nonconforming uses is a legitimate goal which may be achieved by rules and ordinances so long as they strike a reasonable balance between public benefit and private injury); *Whiteco Metrocom Corp. v. Comm'r, Transp. Cabinet, Dep't of Highways*, 14 S.W.3d 24, 28 (Ky. Ct. App. 1999) (the intent of 23 U.S.C. § 131 and of state laws enacted consistent with it is to gradually phase out nonconforming billboards as their natural life is exhausted)) (parentheticals in original).

As authorized by the federal statutory scheme, Tennessee authorized owners of such billboards to perform "customary maintenance," which was defined as "the replacement of the sign face or stringers, but not the replacement of any pole, post, or support structure." Tenn. Comp. R. & Regs. 1680-2-3-.04(1)(a)(1).[4] Tennessee also adopted regulations permitting the owner of a grandfathered, nonconforming billboard to repair or rebuild, subject to certain restrictions, a nonconforming billboard that was damaged or destroyed by a natural disaster. The applicable regulation, Tenn. R. & Regs. 1680-2-3-.04(2), in effect in 1998, stated: "A nonconforming device or grandfathered nonconforming device will be allowed to be rebuilt in the case of natural disaster. Nonconforming and grandfathered conforming devices destroyed or damaged during a natural disaster may be rebuilt to their original height and size *using like materials*." (emphasis added).

Accordingly, when Clear Channel's billboard was destroyed by a severe storm in 1998, it had the right to rebuild the grandfathered, nonconforming device provided it was "rebuilt to [its] original height and size using like materials," and TDOT authorized Clear Channel to rebuild it to the same size "with like materials" pursuant to Tenn. R. & Regs. 1680-2-3-.04(2) (1998). However, Clear Channel chose to use a different material for the post. Instead of using wooden posts, it erected the billboard on a steel post, which would obviously extend the life of the billboard substantially, a circumstance that is expressly prohibited by the federal legislation. TDOT deemed this change in materials to be a violation of Tenn. Comp. R. & Regs. 1680-2-3-.04(2), a decision the administrative judge, the Commissioner, and the chancery court agreed with, and so do we.

---

[4]The regulations also prohibit changing the device's location, adding lighting to a previously unilluminated sign, extending or changing the height above ground level, enlarging the sign face, or adding reflective material to a previously "unreflectorized" sign. Tenn. Comp. R. & Regs. 1680-2-3-.04(1)(a)(2)-(5).

The simple issue here is whether the rebuilt billboard was constructed with "like materials" as required by Tenn. Comp. R. & Regs. 1680-2-3-.04(2). Whether the Commissioner correctly or erroneously interpreted the meaning of the regulatory phrase "like materials" presents a question of interpretation and the general rules of statutory construction are used in construing rules and regulations drafted by administrative agencies pursuant to a legislative delegation of power. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002).

The administrative interpretation controls unless it is plainly erroneous or inconsistent with the regulation itself. *Jackson Express, Inc. v. Tenn. Pub. Serv. Comm'n*, 679 S.W.2d 942, 945 (Tenn. 1984) (citing *Compton v. Tenn. Dep't of Pub. Welfare*, 532 F.2d 561, 565 (6th Cir. 1976) (quoting *Udall v. Tallman*, 380 U.S. 1, 16-17 (1965)). Therefore, courts give great deference and controlling weight to an agency's interpretation of its own rules. *Jackson Express, Inc.*, 679 S.W.2d at 945 (citing *Puerto Rico Mar. Shipping Auth. v. Fed. Mar. Comm'n*, 678 F.2d 327 (D.C. Cir. 1982); *Envtl. Def. Fund, Inc. v. Tenn. Water Quality Control Bd.*, 660 S.W.2d 776, 781 (Tenn. Ct. App. 1983)). The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *Carson Creek Vacation Resorts, Inc. v. Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993); *see also McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001); *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995).

One of the rules of construction requires us to examine the provision at issue in light of its over-arching purpose and the goals of the statutory scheme at issue. *See State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *T.R. Mills Contractors, Inc. v. WRH Enter., LLC*, 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). The applicable regulation was enacted to "enforce any and all regulations as required and necessary to fully carry out" the provisions of both the federal and state acts. Tenn. Code Ann. § 54-21-112. The stated purpose of the federal statute is to establish criteria for "when customary maintenance ceases and a substantial change has occurred which would terminate nonconforming rights," 23 C.F.R. § 750.707(d)(5), and to permit grandfathered, nonconforming devices to remain but only for "the duration of their normal life." 23 C.F.R. § 750.707(c). To allow a steel pole to replace a thirty-year-old wooden post is obviously contrary to the stated purpose of the Federal Highway Beautification Act, the Billboard Regulation and Control Act, and both the federal and state regulatory schemes. An agency's interpretation of its regulations is given great deference, *Jackson*, 679 S.W.2d at 945, and in this case, the Commissioner's interpretation of "like materials" is reasonable and thus not in excess of his statutory authority.

Accordingly, we affirm the chancery court and the decision of the Commissioner that the newly constructed billboard violated Tenn. Comp. R. & Regs. 1680-2-3-.04(2) because

it was not constructed out of "like materials" and thus no longer constituted a grandfathered, nonconforming device.[5]

## II.

Appellants also contend the administrative judge and the Commissioner misapplied the burden of proof. We disagree.

The dispositive issue in this case is whether the rebuilt billboard was constructed with "like materials" as required by Tenn. Comp. R. & Regs. 1680-2-3-.04(2). The record clearly established that it was not. This fact, and the resulting violation of Tenn. Comp. R. & Regs. 1680-2-3-.04(2), was clearly established by the Department. Accordingly, neither the administrative judge nor the Commissioner improperly shifted the burden of proof.

## III.

For their third and final issue, Appellants contend the order requiring removal of the newly constructed billboard constitutes an unconstitutional taking of property without just compensation. As we stated above, the dispositive issue is whether the rebuilt billboard was constructed with "like materials" as required by Tenn. Comp. R. & Regs. 1680-2-3-.04(2).

The newly constructed billboard no longer constituted a grandfathered, nonconforming device, as it was in violation of Tenn. Comp. R. & Regs. 1680-2-3-.04(2). It was merely a new device constructed without a permit. While just compensation may be recovered for a billboard acquired and removed under the federal regulation, 23 C.F.R. 750.707(e), "the conditions which establish a right to maintain a nonconforming sign and therefore the right to compensation must pertain at the time it is acquired or removed." In this case, the newly constructed billboard was constructed in violation of Tenn. Comp. R. & Regs. 1680-2-3-.04(2) (2001); thus, it was an illegal device for which no compensation is owing. *See* 23 C.F.R. 750.703(e).

---

[5]Appellants also made the argument that TDOT's interpretation of the regulation produced an absurd result and violated public policy because it would require that the billboard be rebuilt using outlawed materials and a design that violated building codes. We find no merit to this argument because Appellants did not submit a plan to the City of Chattanooga nor was there any proof in the record that it would be impossible to safely rebuild the billboard with wood posts.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Appellants, Clear Channel Outdoors and George and Katherine Morgan, jointly and severally.

_____
FRANK G. CLEMENT, JR., JUDGE