IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 13, 2018 Session


**BETHEL UNIVERSITY v. TENNESSEE STATE BOARD OF EDUCATION, ET AL.**


**Appeal from the Chancery Court for Davidson County**
**No. 16-920-I          Claudia C. Bonnyman, Chancellor**

_____

**No. M2017-01428-COA-R3-CV**

_____


The Tennessee Board of Education ("the Board") denied approval of Bethel University's ("Bethel") educator preparation program ("EPP"). After unsuccessfully pursuing remedies under the Uniform Administrative Procedures Act (UAPA), Bethel sought judicial review of the Board's action. The trial court found that the Board Policy 5.504, relied upon by the Board in its decision, was invalid and reinstated approval of Bethel's EPP. The Board appeals, asserting 5.504 is a valid policy within the meaning of the UAPA and that the court erred in reinstating Bethel's EPP. We affirm the trial court's holding that 5.504 is a rule within the meaning of the UAPA and, since it was not promulgated as a rule in accordance with the UAPA, it is invalid and could not be used as a basis of denying approval of Bethel's EPP. Further, we have determined that the court exceeded its authority in ordering reinstatement of Bethel's EPP; we vacate the decision in that regard and remand the case to the trial court with instructions to remand the case to the Board for further consideration of Bethel's approval status as an EPP.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Lindsay Haynes Sisco, Assistant Attorney General, for the appellant, Tennessee State Board of Education.

Lawrence F. Giordano, Knoxville, Tennessee, for the appellee, Bethel University.

## OPINION

## I. FACTUAL AND PROCEDURAL HISTORY[1]

Bethel University ("Bethel") is a private, non-profit, four-year, post-secondary, educational institution with its primary campus located in McKenzie, Tennessee. The Tennessee State Board of Education ("the Board") is the agency responsible for promulgating and adopting rules and regulations pertaining to education; the Tennessee Department of Education ("the Department") is the agency responsible for the administration and enforcement of Tennessee statutes relating to education.

Until July 22, 2016, Bethel's School of Education's educator preparation program had been approved as an Educational Preparation Provider ("EPP")[2] by the State of Tennessee; Bethel had this approval for as long as the Board and the Department have required teacher training programs be approved in order to recommend graduates for teacher licensure.[3]

---

[1] The factual and procedural history is derived from the joint stipulations of the parties filed in the administrative proceeding as well as in the judicial review proceeding.

[2] Both the educatory preparation programs and the institutions that provide these programs are commonly known as Educator Preparation Providers; accordingly, EPP is used throughout the record to refer to both Educator Preparation Providers and the educator preparation programs provided thereby.

[3] In Tennessee, the accreditation process for educator preparation programs, as well as the Board's role therein, was succinctly described in the joint stipulations of the parties filed in the administrative proceeding as well as in the judicial review proceeding, which we reproduce in pertinent part:

> 13. Under Tennessee law, teaching licenses may be issued only to those students who have graduated from a Tennessee institution that has been certified by the Department or an out-of-state institution certified by the state in which it is located.
>
> 14. Under the current Board Policy, EPPs, such as Bethel, have two approval management options when they seek State Board approval to recommend candidates for teacher licensure in Tennessee. First, they may elect to seek national accreditation through a review managed by a national accrediting agency approved by the United States Department of Education to accredit educator preparation providers currently known as the Council for the Accreditation of Educator Preparation ("CAEP"), (or, prior to 2013, by its predecessor agency, the National Council for the Accreditation of Teacher Education ("NCATE")). In the alternative, they may choose to pursue ongoing approval through the state-managed review process.
>
> 15. Regardless of which option EPPs choose, EPPs are evaluated against the CAEP standards. If the EPP is seeking approval through the state-managed pathway, they are reviewed by a review team appointed by the Department. If the EPP is seeking approval through the CAEP accreditation pathway, they are reviewed by a review team jointly selected by CAEP and the Department.

In November of 2013, the Department's review team, after conducting an on-site visit, determined Bethel did not meet two of the Council for the Accreditation of Educator Preparation ("CAEP") standards; as a result of this determination, the Department recommended that Bethel receive continuing approval with stipulations, a recommendation that the Board approved on July 25, 2014.

In April of 2015, the Department's review team assessed Bethel's progress in addressing the areas of deficiencies and issued a report concluding that Bethel met both of the previously unmet standards, though there were some areas of persisting weakness. Accordingly, the Department intended to recommend that the Board grant continuing approval to Bethel without stipulations at a board meeting on July 24, 2015. At the Board's workshop on July 23, 2015, however, the Department's Commissioner, Candice McQueen, reported to the Board that, after learning that Bethel was moving toward CAEP accreditation, the Department wanted to "let the CAEP process play out" before making its recommendation. Commissioner McQueen explained that Bethel's then-current status was "approval with stipulations" and that Bethel had until the fall of 2017 to make improvements to its current status. At its meeting, the Board deferred action, pending the CAEP procedure; Bethel was notified this deferral of action had no impact on its ability to recommend its EPP students as candidates for licensure.

On May 10, 2016, Bethel was granted national accreditation for two years and, based on the CAEP's finding that two of its standards were not fully met, given until the fall of 2017 to demonstrate progress towards addressing those deficiencies.

---

16. As a part of the review and approval process, the review team conducts an on-site visit of the institution and it prepares an on-site review report that is submitted to the Department and the Commissioner's Advisory Committee which, after considering the review team's recommendations, then submits recommendations to the Department for presentation to the Board.

17. In the past, the Department's recommendations to the Board for EPPs fell into one of three categories: approval, approval with stipulations, or denial of approval. Under current Board Policy, there are five categories of approval, which are as follows: full approval, exemplary status; full approval; full approval, minor stipulations; probationary approval, major stipulations; or denial of approval.

18. EPPs that obtain approval by the Department must undergo a comprehensive review process that includes an on-site visit by a review team every seven years to maintain continuing approval.

We note that CAEP formerly operated as NCATE until 2013; these entities are interchangeably used throughout the record. For clarity, we will refer to this entity exclusively as CAEP, regardless of its title at the time, as the distinction is not material to our analysis or ruling.

On July 8, 2016, Commissioner McQueen informed Bethel that the Department would be recommending to the Board that it deny continuing approval of Bethel's EPP at the next scheduled meeting, July 22, 2016. At this meeting, the Department presented this recommendation, based on an on-site review by the CAEP that concluded Bethel did not meet expectations on two of the six CAEP standards and had additional areas for improvement in three of the other standards. The Board then voted to approve this recommendation. Immediately thereafter, Bethel was informed that, as a consequence of the denial, it must cease recruiting and enrolling new students in its initial and advanced education programs and must transfer any currently enrolled Bethel students who cannot complete their programs within twelve months of the date of denial of approval to other programs or schools. Following the Board's action, Bethel requested a stay of the Board's action. On September 1, 2016, the Board held a special called meeting to consider Bethel's request for a stay; the Board denied the request.

On August 15, 2016, Bethel filed a complaint for declaratory judgment and injunctive relief in Davidson County Chancery Court, naming as defendants the Board; the Department; Commissioner McQueen; Ms. Sara Heyburn, the Executive Director of the Board; and individual members of the Board. On the same day, Bethel filed a motion for a restraining order and temporary injunction, requesting the defendants be prohibited from enforcing any aspect of the Board's July 22 decision until the court rendered a further order or final determination on the merits; the court granted this motion and filed a restraining order on August 17. However, this order did not set a date for hearing Bethel's motion for a temporary injunction, and the chancellor assigned to the case recused herself on August 18. On August 25, Bethel filed an emergency motion to extend the restraining order, as an order of reassignment or transfer had not yet been entered and the restraining order was to expire on September 1, 2016. On August 26, an order was entered transferring the case to a new judge; on August 29, the restraining order was extended by agreement of the parties.

On September 15, Bethel filed a Petition for Declaratory Order and Request for Stay with the Board, requesting the Board immediately stay enforcement its decision denying approval of Bethel's EPP upon receipt of the petition and until the issuance of a declaratory order following a contested case hearing or until the time limit for convening a contested case hearing; Bethel also requested that the Board convene a meeting on an expedited basis to consider its petition and either refuse to issue a declaratory order pursuant to Tennessee Code Annotated section 4-5-223(a)(2) or set this matter for a contested case hearing as soon as possible prior to the sixty-day time limit for disposing of the appeal set forth in Tennessee Code Annotated section 4-5-223(c).

On September 16, Bethel filed its first amended verified complaint, stating that it had filed the administrative petition. On September 22, the court denied Bethel's motion for a restraining order and temporary injunction, finding Bethel had not exhausted its

administrative remedies. The Board then filed a motion to dismiss Bethel's complaint on that basis.

At its regularly scheduled October 14 meeting, the Board voted to convene a contested case hearing on Bethel's petition; it did not address Bethel's request for a stay of enforcement. The hearing was held on January 25, 2017 before the Board and an administrative law judge; after deliberation, the Board returned a unanimous vote, holding that the Board's denial of approval of Bethel's EPP was a valid and lawful action, and that Bethel was not entitled to reinstatement of its approval status.

On February 2, Bethel moved to amend its complaint in chancery court to seek judicial review under the UAPA of the Board's January 25 declaratory order; on February 10, the court heard this motion and the Board's motion to dismiss for failure to exhaust administrative remedies. On February 16, the court entered an order, granting Bethel's motion to amend, approving Bethel's oral notice of voluntary dismissal of all other parties and causes of action, and denying the Board's motion to dismiss.

At a hearing on June 13, the court issued an oral ruling, setting forth its findings of facts and conclusions of law on Bethel's motion for judicial review; on June 29, the court entered an order incorporating its oral ruling, finding the Board's EPP Policy 5.504 invalid because it was not properly promulgated as a rule, restoring Bethel's approved EPP status, and declaring the remaining issues in Bethel's petition moot as a result of the court's finding that the Board's denial of approval was invalid.

On July 14, the Board filed a notice of appeal and a motion to stay enforcement of the June 29 final order pending appeal; on August 3, the trial court denied the motion to stay. Bethel presents two issues on appeal:

I. Whether the educator preparation policy of [the Board] is valid under Tenn. Code Ann. §§ 4-5-102(10), -(12)(E)(ii); 49-1-302(a)(5)(A)(i); and 49-5-101(e).

II. Whether the chancery court erred when it reinstated [Bethel's] [EPP].

## II. STANDARD OF REVIEW

The Uniform Administrative Procedures Act ("UAPA") provides for judicial review of an agency decision in the chancery court, Tennessee Code Annotated section 4-5-322(b)(1)(A), and the decision of the chancery court may then be appealed to this Court pursuant to the Tennessee Rules of Appellate Procedure. Tenn. R. App. P. 3(a).

This Court, as well as the trial court, reviews the Commission's decision under the narrowly defined standard of review contained in the UAPA, section 4-5-322(h), rather

5

than under the broad standard of review used in other civil appeals. *Clear Channel Outdoors v. Tennessee Dep't of Transp.*, 337 S.W.3d 801, 804 (Tenn. Ct. App. 2010). Specifically, that UAPA provides:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
>> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).

A reviewing court should generally defer to an administrative agency's decision when it is acting within its "'area of specialized knowledge, experience, and expertise.'" *Williamette Indus., Inc. v. Tennessee Assessment Appeals Comm'n.* 11 S.W.3d 142, 146 (Tenn. Ct. App. 1999) (quoting *Wayne Cnty. v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988)). As noted by this Court in *Moore v. Neeley*, "[o]ne of the most venerable doctrines in administrative law is that a court will give great deference to an agency's interpretation of its own rules." No. W2006-00438-COA-R3-CV, 2006 WL 3371132, at *5 (Tenn. Ct. App. Oct. 6, 2006) (citing 33 Charles Alan Wright & Charles H. Koch, Jr., *Federal Practice and Procedure* § 8353 (2006)). This Court reviews the factual findings of the Commission under the limited provisions of Tennessee Code Annotated section 4-5-322, and we review matters of law *de novo* with no presumption of correctness. *Davis v. Shelby Cnty. Sheriff's Dept.*, 278 S.W.3d 256, 264 (Tenn. 2009) (citing Tenn. R. App. P. 13(d); *Cumulus Broad, Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007)).

### III. ANALYSIS

#### A. Validity of EPP Policy 5.504

The threshold issue on appeal is whether EPP Policy 5.504 is a rule, subject to the

6

rule-making procedures in the UAPA, or a policy of the Board, not subject to those procedures. The distinction between a policy and a rule is significant, because "the UAPA requires a state agency in Tennessee to follow uniform procedures when making rules." *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 311 (Tenn. 2005) (citing Tenn. Code Ann. §§ 4-5-201 *et seq*.) Any agency rule not adopted in accordance with the UAPA rule-making provisions "shall be void and of no effect" and cannot be invoked by the agency for any purpose. Tenn. Code Ann. § 4-5-216. In contrast, the UAPA imposes no such requirement on an agency's ability to create and adopt policies. The parties stipulated that this policy, EPP Policy 5.504, was not promulgated under the UAPA.

The parties rely upon several statutes that were amended after oral arguments and took effect July 1, 2018. These amendments, contained in Ch. 929, Pub. Acts of 2018, changed the definitions of "policy" and "rule" at Tennessee Code Annotated section 4-5-102(10) and (12), respectively. The bill adopting the amended definitions does not provide that the definitions are to be applied retroactively; consequently, we review the Board's determination that EPP Policy 5.504 is a policy and not a rule under the definition of those terms prior to July 1, 2018.

At the time of the Board's determination, the UAPA defined a "policy" to mean "a set of decisions, procedures and practices pertaining to the internal operation or actions of an agency." Tenn. Code Ann. § 4-5-102(10). The Board argues that EPP Policy 5.504 meets this criteria as well as being one of the exceptions to the definition of "rule" stated at section 4-5-102(12)(A) and (E)(ii). Further, the Board contends that the authority relied upon by the trial court in its ruling does not involve agencies statutorily authorized to adopt policies, as is the case here, and that such statutes control over the UAPA general provisions regarding rule-making. *See* Tenn. Code Ann. § 49-1-302(a)(5)(A)(i) (granting the Board the power and duty to "[a]dopt policies governing: [t]he qualifications, requirements and standards of and provide the licenses and certificates for all public school teachers, principals, assistant principals, supervisors and directors of school"). Lastly, the Board asserts that its properly promulgated rule, Tennessee Comprehensive Rules and Regulations 0520-02-04-.01(1), satisfies its obligations under UAPA; this rule provides: "[a]ll educator preparation providers and the licensure programs they offer must be approved by [the Board] [and that a]pproval shall be awarded based on policies established by [the Board]."

EPP Policy 5.504 is inconsistent with the definition of "policy" at section 5-4-102(10) because it is not only concerned with the internal operation of the Board. It is a comprehensive document that sets forth the standards and means by which an institution can have its education program designated as an EPP, thereby permitting students who successfully complete the institution's requirements to be recommended for licensure by the State of Tennessee. The parties stipulated that EPP Policy 5.504 "sets forth the Board's process for how review teams evaluate and approve EPPs, including the Board's

7

requirements for conditional and full approval as well as the steps in the review process and the possible outcomes." This is illustrated by the Board's factual findings:

> 5. The State Board approves and denies Educator Preparation Providers and Programs ("EPPs") pursuant to its EPP Policy 5.504 ("EPP Policy") and Tenn. Comp. R. & Regs. 0520-02-04-.01.

> 8. The EPP policy outlines a multi-level process, at which the decisions concerning approval are discretionary.

These findings affirm that EPP Policy 5.504 affects more than the Board's internal management by dictating approval processes for organizations like Bethel, which are not internal to the agency, and are beyond the scope of internal management.

In like manner, EPP Policy 5.504 is consistent with the definition of a "rule" at Tennessee Code Annotated section 4-5-102(12), which states in pertinent part:

> (12) "Rule" means each agency statement of general applicability that implements or prescribes law or policy or describes the procedures or practice requirements of any agency. "Rule" includes the amendment or repeal of a prior rule, but does not include:

> (A) Statements concerning only the internal management of state government and not affecting private rights, privileges or procedures available to the public;

> ***

> (D) General policy statements that are substantially repetitious of existing law;

> (E) Agency statements that:

>> (ii) Relate to the curriculum of individual state supported institutions of postsecondary education or to the admission or graduation of students of such individual institutions but not to the discipline or housing of students.

Relative to this issue, the Board made the following finding, which brings EPP Policy 5.504 squarely within the definition of rule:

> 7. The EPP Policy contains the procedures and practices pertaining to the internal operation or actions of the State Board for reviewing of EPPs.

Further, while EPP Policy 5.504 may affect the curriculum or graduation of students of individual state-supported institutions, it does not directly relate to these and does not fall within the statutory exception at Tennessee Code Annotated section 4-5-102(12)(E)(ii).

## B. Reinstatement of Bethel's EPP

The second issue we address is whether the trial court erred when it reinstated Bethel University's educator preparation program. In its final order, the court held:

> That Bethel's EPP's status is restored to the approved status it possessed before the Board invalidly attempted to deny Bethel's EPP approval using the invalid Board Policy 5.504 on or about July 22, 2016.

The court's oral ruling expounds upon this holding, stating:

> The Court must find here that due to the court's finding that the board's denial of approval of the plaintiff's EPP -- or the Court must find that the board's denial of approval of the plaintiff's EPP was invalid because the policy on which the board relied was not properly promulgated in accordance with the APA. . . . The policy cannot serve as the basis for denial of approval of the plaintiff's EPP because the denial is deemed invalid, and the Court does deem the policy invalid because it cannot be implemented absent its being -- going through the rulemaking process and becoming a legitimate rule. So the policy cannot serve as the basis for denial of approval of the plaintiff's EPP. Because this denial is deemed invalid, the last action that is standing is the latest approval by the State of the plaintiff's EPP. This conclusion, although not satisfying to the hard-working and very admirable Tennessee Board of Education, is the only reasonable outcome of this judicial review.

The UAPA's narrow standard of review provides that the reviewing court "may affirm the decision of the agency or remand the case for further proceedings. Tenn. Code Ann. § 4-5-322(h). Beyond this limited scope of action, the reviewing court may reverse or modify the agency's decision, but only in such circumstances as specified by the UAPA:

> The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> > (1) In violation of constitutional or statutory provisions;
> >
> > (2) In excess of the statutory authority of the agency;

9

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

*Id.*

We are of opinion that the trial court exceeded its authority in restoring Bethel's EPP status as relief in this proceeding; rather, the court's authority, under the circumstances presented, is to remand the case to the Board for further consideration in light of its disposition of the administrative appeal.

## IV. CONCLUSION

For the foregoing reasons, we affirm the holding that EPP Policy 5.504 is a rule that was not promulgated under the UAPA and, as a consequence, could not be used as a basis of denying approval of Bethel's EPP. We vacate the portion of the trial court's order restoring Bethel's EPP status and remand the case with instructions for the court to remand the case to the Tennessee Board of Education for further consideration, in light of this opinion.[4]

RICHARD H. DINKINS, JUDGE

---

[4] On January 11, 2018, the Board moved this court to consider that on August 10, Bethel voluntarily withdrew from its CAEP accreditation review and cancelled its fall 2017 on-site visit and that Bethel's EPP is now without national accreditation. On January 25, 2018, the court granted this motion, stating in its order:

> The court finds good cause to consider the post-judgment fact under Tenn. R. App. P. 14. The court reserves judgment as to all other issues including the relevance, if any, of the post-judgment fact.

This is not a fact that we have considered in our disposition of the appeal; it is a matter that the Board can consider on remand.